UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROSEMARY MARSH,

        Plaintiff,

                                                  Case No. 10-14120

v.                                          Honorable Julian Abele Cook, Jr.

ASSOCIATED ESTATES REALTY CORP. et al.,

        Defendants.


<u>ORDER</u>

       The Plaintiff, Rosemary Marsh, has accused the Defendants[1] of wrongfully terminating her employment for reasons of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and the Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 et seq.

       Currently before the Court are two dispositive motions, one filed by AERC of Michigan and one filed jointly by the remaining three Defendants.

I.

       Marsh was hired as a leasing consultant by AERC of Michigan in March 2004. She was

---

[1]The Defendants are (1) Associated Estates Realty Corp. ("AERC"); (2) AERC of Michigan, LLC; (3) AERC Oaks Hampton, LLC; and (4) AERC Oaks, Inc. AERC is an Ohio corporation, of which AERC of Michigan is an affiliate. AERC of Michigan, an Ohio limited liability company, manages various residential properties in Michigan, including an entity known as The Oaks at Hampton (located in Rochester Hills). This property, in turn, is owned by AERC Oaks Hampton, a Delaware limited liability company. AERC Oaks Inc. is a subsidiary of AERC.

interviewed and hired by Pam Carson, a property manager who also served as her supervisor. Approximately one year later, she voluntarily left her position to pursue employment opportunities elsewhere. All of the parties agree that she left the Company on good terms and that Carson told her that she "could always come back" to AERC of Michigan. After Carson contacted Marsh and asked if she would like to return, she resumed her position with AERC of Michigan in May 2005. However, Marsh's tenure of employment was shortened when her employment was involuntarily terminated in December of 2007. Marsh was sixty years old when she was initially hired, sixty-one years old when she was rehired, and sixty-three years old when she was terminated.

During her tenure at AERC of Michigan, Marsh primarily worked as a leasing consultant at The Oaks at Hampton, where her primary job responsibility was to facilitate the rental of the apartments (i.e., showing apartments to prospective tenants, obtaining leases, marketing and promotion, and assisting residents). The evidence reflects - and the Defendants do not contest - that she was effective in this position when performance is measured in terms of the number of apartments leased.

However, AERC of Michigan also uses additional metrics to evaluate the performance of its employees, such as the use of a third-party contractor who conducts anonymous telephone and video evaluations of a leasing consultants' sales techniques and customer communication skills. The contractor scores these so-called "phone shops" and "video shops" on a one-hundred-point scale, which is broken down into numerous sub-components. Leasing consultants are expected to achieve a score of at least ninety (90) on the "telephone shops" and at least eighty (80) on the "video shops." This expectation is conveyed to the employees in an "Audio and Video Recording Acknowledgment" form, which advises them that (1) they may be recorded and evaluated, and (2)

these evaluations "may be used for rewarding good performance, coaching for improved performance, and for disciplinary purposes, up to and including termination of employment." (AERC of Mich. Mot. for Summ. J. at Ex. 16). Despite acknowledging that she received and signed this form, Marsh insists that she had been repeatedly assured that these "shops" would be used only to assist the employees in improving their job performances and not for such disciplinary measures as demotion or discharge.

Marsh's scores on these evaluations were considerably lower than expectations. Over the course of her employment, she received scores of forty-one and fifty-six on the "video shops," and eighty-two, forty-five,[2] forty-one, fifty-seven, thirty-five, eighty-three, eighty, one hundred, fifty, and seventy-six on the "phone shops." Thus, out of twelve total evaluations, she met expectations only once. In a "video shop" in February 2006, Marsh failed to obtain the identification of an (acting) prospective tenant prior to providing a tour of the apartment. This failure runs counter to AERC of Michigan's personal safety policy, which provides that government-issued identification must be obtained from each individual of legal age prior to embarking upon a tour of the facilities. (*Id.* at Ex. 14). The policy also states that "[e]veryone must be treated in a fair, equal manner; therefore, consistency when administering this policy is essential." (*Id.*). On March 16, 2007, Carson and Diane Shimoura (another property manager) sent Marsh a memorandum which indicated that (1) all three of her "phone shop" evaluations (eighty-two, forty-five (disregarded), and forty-one) during the preceding six-month period were unacceptable, and (2) her scores must significantly improve. Several days later (March 20th), she received a "phone shop" score of fifty-

_____

[2]This score came around the same time that Marsh had received a diagnosis of kidney cancer and was disregarded by her employer.

3

seven. During the following week (April 2nd), she received another memorandum advising her that she was required to take several immediate steps to improve her scores. On April 17th, Shimoura sent her a written warning which specified that "future phone shops need to be within acceptable range." Marsh was also advised that, if she failed satisfy this requirement, "additional corrective action, up to and including termination[,] will occur." (*Id.* at Ex. 23). She subsequently received three unacceptable scores (eighty-three, eighty, and fifty) - in addition to her one acceptable score of one hundred - in the next five months.

Employees of AERC of Michigan are also evaluated through annual performance reviews. In January 2005, Marsh was given an overall score of two out of four ("Meets basic expectations; requires improvement in some areas."), with sub-scores of two in several areas (communication, creativity, customer satisfaction, initiative, and job knowledge) and three in others (dependability, planning and organization, and teamwork). Later that year, she was issued an employee reprimand in which several areas for improvement were highlighted. In 2006, her overall performance review score was three out of four ("Generally satisfies expectations and recognizes areas for improvement."), based on sub-scores of two in several areas (communication, creativity, job knowledge, and planning and organizing), three in others (customer satisfaction, initiative, and teamwork), and a four in one (dependability). Her 2007 review showed improvement, with an overall score of three and only one sub-score of two (creativity).

In October 2007, AERC of Michigan employed Amy Horn to serve as its property manager at The Oaks at Hampton, and Carson was promoted to a position in which she no longer had day-to-day responsibilities at that location. In November 2007, Marsh received a "video shop" score of fifty-six and, once again, failed to obtain the requisite identification prior to providing a prospective

tenant with a tour through the facilities. According to the affidavits that were submitted by AERC of Michigan, Miria Rabideau (regional vice president of AERC of Michigan) contacted Carol Screngi (human resources generalist for AERC) to express her concerns about Marsh's work performance, such as her low "phone shop" scores and her violations of the Company's identification policy.

After reviewing Marsh's performance documents, Screngi recommended that Rabideau and Carson place Marsh on final probation and provide her a "Performance Development and Improvement Form" ("PDIF"). She also advised them to schedule additional "phone shops" and "video shops" for Marsh during the month of March so that her compliance with the PDIF could be assessed. After Rabideau approved this course of action, Carson relayed this recommendation to Horn, who, on November 29, 2007, met with Marsh to present her the PDIF.

The PDIF (1) indicated that Marsh was being placed on final probation, (2) identified several areas in which her performance had not met Company standards, and (3) required her to, among other things, always obtain the identification of every prospective tenant prior to every tour and attain a score at least ninety (90) on all future "video shops" and "phone shops." (AERC of Mich. Mot. for Summ. J. at Ex. 25). This form also indicated that her failure to achieve these objectives would result in "additional action, up to and including termination."

On December 5th, Marsh received a phone shop score of seventy-six, which was reported by Horn to Carson. On December 6th, Cornelius Young (a leasing manager with AERC of Michigan) notified Horn via e-mail that Marsh had (1) violated a company policy against holding apartment units without receiving deposits in advance, and (2) shown particular apartment units to tenants, contrary to an instruction that they not be shown. On December 10th, Horn forwarded this

e-mail to Carson and inquired as to her "thoughts on moving forward." (*Id.* at Ex. 27). Carson recommended that Marsh's employment be terminated - a decision that was approved by Rabideau and Screngi.

On December 12th, Horn met with Marsh to advise her of her termination. Marsh contends that Horn stated during this meeting, "I think you're getting too old for your job because of that phone shop" or "I think you're just getting a little too old for your job." (Marsh Dep. 129:10-130:7, Copy at Ex. 2 to Pl.'s Resp. to Defs.' Mots. for Summ. J.). Marsh also alleges that Horn directed several derogatory age-related comments toward her during the two months of her supervision. Specifically, she states that Horn (1) called her "Old Rose" on "a couple" of occasions, (2) had make statements to the effect of "you're slipping, you're getting old" when anybody forgot something, and (3) inquired on one occasion when Marsh had to put paper in the bottom drawer of the photocopier if she was "too old to get down there." (*Id.* 123:8-124:17).

On December 29, 2007, Marsh completed an intake questionnaire with the Equal Employment Commission ("EEOC"), and on January 2, 2008, she filed a discrimination charge. On June 3, 2010, the EEOC issued its finding of reasonable cause to believe that she had been discharged in violation of the ADEA. When efforts at settlement failed, the EEOC issued a "right-to-sue" letter on July 15th. Marsh timely filed this lawsuit on October 13th.

## II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004).

When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

III.

A.      <u>Legal Framework</u>

The ADEA prohibits an employer from terminating an employee because of the person's age. 29 U.S.C. § 623(a)(1). "An employee may establish a claim under the ADEA by offering either direct or circumstantial evidence of age discrimination." *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Direct evidence is that which, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Heathcare Prods., Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)); *see also Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) ("[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice . . . ."). Once the plaintiff produces sufficient direct evidence of discrimination, "[t]he burden of persuasion then shifts to the defendant to show that it would have terminated the plaintiff's employment absent the discriminatory motive." *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989) (plurality op.)).

In the absence of direct evidence, a plaintiff can meet her evidentiary burden through circumstantial evidence - that is, "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred," *Kline*, 128 F.3d at 348 - relying upon the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In the age discrimination context, a plaintiff may establish a prima facie case by

8

establishing that "(1) [s]he was at least 40 years old at the time of the alleged discrimination, (2) [s]he was subjected to an adverse employment action, (3) [s]he was otherwise qualified for the position, and (4) [s]he was rejected and someone outside the protected class was selected." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 594 F.3d 476, 485 (6th Cir. 2010); *see also Town v. Mich. Bell Tel. Co.*, 568 N.W.2d 64, 68 (Mich. 1997) (under Michigan law, describing fourth element as "others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct"). The fourth prong under *Harris* can also be established by a showing that "'a substantially younger person . . . was treated more favorably than' the plaintiff." *Alfrey v. AK Steel Corp.*, 211 F. App'x 393, 395 (6th Cir. 2006) (unpublished) (quoting *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048 (6th Cir. 1998)).

The burden of establishing a prima facie case is not onerous, and does not require the plaintiff to demonstrate a causal connection between her age and the adverse employment action. *Morrow v. Am. Bag Corp.*, 23 F. App'x 450, 454 (6th Cir. 2001) (unpublished) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Such a showing is, of course, is "tantamount to ultimate vindication on the discrimination cause of action," *id.*, and is not required at this stage.

Once the employee establishes all four elements of the prima facie case, "the employer may respond by offering a legitimate, nondiscriminatory reason for the adverse employment action at issue. Assuming that such a response is made, the employee then bears the burden of rebutting this proffered reason by proving that it was a pretext designed to mask age discrimination." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003) (en banc) (citations omitted).

"Michigan courts frequently look to federal law when reviewing claims of age

discrimination under the Elliott-Larsen Act." *Scuderi v. Monumental Life Ins. Co.*, 344 F. Supp. 2d 584, 592 (2004); *see also Brocklehurst v. PPG Industries, Inc.*, 123 F.3d 890, 894 (6th Cir.1997). Thus, this Court may appropriately consider federal and state law when analyzing Marsh's ELCRA claim. *Scuderi*, 344 F. Supp. 2d at 592. However, where the two differ, the Court will so indicate.

B.    Direct Evidence

Marsh appears to argue that she has presented direct evidence - in the form of statements from Amy Horn - of age discrimination. As noted above, she alleges that Horn (1) called her "Old Rose" on a couple of occasions, (2) made an age-related comment when Marsh had to bend down to reach the lowest drawer of the photocopier, (3) made statements to the effect of "you're slipping, you're getting old" when any employee forgot something, and (4) said something akin to "I think you're getting too old for your job because of that phone shop" or "I think you're just getting a little too old for your job" when she advised Marsh of her termination.

With respect to the first three alleged statements, the Court finds that they are insufficient to establish that Marsh was terminated because of her age. She has not made any showing that these statements were causally related to the decision by the Company to terminate her. *See Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012) ("Statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." (citations and internal quotation marks omitted)); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 370 (6th Cir. 1998) ("[E]ven if direct evidence allows a plaintiff to escape the burden-shifting approach, the plaintiff still bears the burden of persuasion that age was the cause of the adverse employment action."). Where, as here, a plaintiff asks a court (or a jury) to *infer* from age-related comments that the adverse employment action

occurred *because of* age, the plaintiff has failed to present direct evidence of age discrimination. *Bush*, 161 F.3d at 370 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994), for proposition that "evidence that would require the jury to infer a fact is not direct evidence").

With regard to the fourth alleged statement, the Court concludes that it, too, does not constitute direct evidence of discrimination. Notwithstanding Marsh's claim to the contrary, Horn was not the decision-maker with respect to her termination. *See Lefevers*, 667 F.3d at 724 ("Statements by nondecisionmakers. . . [can not] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." (citations and internal quotation marks omitted)). Certainly, Horn was involved in the termination decision, in that she notified Carson of the unacceptable "phone shop" score and the allegations by Young of additional violations of Company policy during Marsh's "final probation" period. But there is no evidence that it was Horn's decision to terminate Marsh. On the contrary, she expressly sought Carson's advice as to how to proceed. Furthermore, it was Carson who recommended that Marsh be terminated - a recommendation that was approved by her superiors, Rabideau and Screngi. The Defendants have presented evidence that indicates that Horn merely carried out a decision that had been made by others. Marsh has presented no evidence to the contrary.[3] Moreover, Marsh expressly disclaims any allegation that (1) any individual other than

---

[3]Marsh argues that she has met her burden by pointing to interrogatory responses provided to the EEOC in which, in response to the request to name "each person who recommended Claimant's discipline, demotion, and/or discharge," AERC listed Horn along with Catherine Geiser (another property manager), Shimoura, and Carson. However, the evidence has plainly established that the extent of Horn's participation in the termination decision was to pass along to the decision-makers some of the information - generated not by Horn but by third parties who are not accused of discriminating against Marsh - upon which they ultimately based their decision. Marsh has not presented any evidence that creates a genuine issue of a material fact as to the nature and extent of Horn's participation.

Horn subjected her to discrimination on the basis of her age, or (2) she was discriminated against in any way prior to Horn's hiring.

The Court also notes that Marsh's claim that Horn made this statement is directly contradicted by the record. For one thing, Horn has expressly denied having made any jokes or comments about Marsh's age. (Horn Aff. ¶ 5, Copy at Ex. 24 to AERC of Mich. Mot. for Summ. J.). Far more damaging is the fact that, throughout the entirety of the EEOC investigatory process, Marsh never once claimed that Horn referred to Marsh's age when she was terminated. Indeed, in the EEOC intake questionnaire that was completed by her within three weeks of the challenged termination, Marsh offered a very different version of this statement. There, Marsh claimed that Horn said that she "didn't think that [she] could do [her] job anymore, because [her] score on the phone shop wasn't up to 'her' standards." (EEOC Intake Questionnaire at 3, Copy at Ex. 5 to Pl.'s Resp.). In a follow-up letter that was written by her to the EEOC in August 2008, Marsh asserted that Horn said, "I am not sure that you can do your job anymore." (Letter from Marsh to EEOC at p. 4, Copy at Ex. 5 to Pl.'s Resp.). In the EEOC charge of discrimination, which was completed in January 2008, Marsh stated that "[her] new manager has made jokes and comments about [her] age," but did not make any reference to the comment that Horn allegedly made when she was terminated. (EEOC Charge of Discrimination, Copy at Ex. 28 to AERC of Mich. Mot. for Summ. J.). Finally, she makes no reference to this alleged comment in her complaint, which was filed in October 2010. Yet, while being deposed in October 2011, Marsh claimed that Horn said something like, "I think you're getting too old for your job because of that phone shop." It seems incredible that, if Horn had actually made this age-related statement, Marsh would not have mentioned it a

single time during her nearly three years of active involvement in this age discrimination claim.[4] While the Court is aware of its obligation to view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party, this does not require the Court to accept as true plainly implausible allegations that are directly controverted by the record. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087-88 (6th Cir. 1996) (citation and internal quotation marks omitted) ("The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must do more than simply show that there is some metaphysical doubt as to the material facts. Further, [w]here the record taken as a whole could not lead a rational trier of fact to find for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is implausible.").

For all of these reasons, the Court concludes that Marsh has not presented direct evidence of age discrimination.

C.      Prima Facie Case

There is no question that Marsh has established the first two elements of her prima facie case (namely, that she is within the protected class and that her termination was an adverse employment action). Marsh argues that the third element - qualification for the position - is met here because she was the best-performing leasing consultant in terms of the number of apartments leased. However, AERC of Michigan disputes this characterization, pointing to (1) evidence that, it argues, demonstrates that Marsh lacks honesty and integrity, and (2) her unacceptable "phone shop" and "video shop" scores and violations of company policy. The Court will examine each

---

[4]Although Marsh stated, in her deposition, that she had told EEOC investigators about this comment, she has presented no support for this allegation, and *all* of the documentation in this case contradicts it.

purported basis in turn.

First, AERC of Michigan submits that Marsh was not a qualified employee because the evidence that it obtained during the course of discovery demonstrates that she lacked honesty and integrity. It notes that, on her first job application, Marsh falsely indicated that she was a high school graduate. In response, Marsh notes that her second application for employment accurately reflected her receipt of a GED - which, in any event, satisfied the required job qualification. When questioned in her deposition about this discrepancy, Marsh responded by asserting that she "considered [the GED to be] a high school diploma." (Marsh Dep. 23:8-9). The Court does not believe that this is the sort of "gross distortion" that other courts have found demonstrates a lack of trustworthiness and veracity that renders an applicant materially unqualified for any job. *See Serrano v. Cintas Corp.*, Nos. 04-40132 and 06-12311, 2008 WL 4539339 (E.D. Mich. June 10, 2008) (adopting Report and Recommendation of Magistrate Judge Donald Scheer).

AERC of Michigan also points to alleged misrepresentations made by Marsh in the course of unrelated proceedings. Specifically, it contends that, in filling out her asset schedules in a Chapter 11 bankruptcy proceeding, she deliberately understated the probable value of an ongoing class-action lawsuit of which she was a member. In her 2004 bankruptcy petition, Marsh wrote that had been advised that she would not likely recover any monies, but, in the event that she did receive some recovery, she claimed an exemption of up to $5,000. The bankruptcy court granted her a discharge that same year. Five years later, she received a settlement of $234,000. According to AERC of Michigan, these funds were never disclosed to the bank in the course of an ultimately successful attempt to be approved for a short sale in 2010. In response, Marsh, while acknowledging her receipt of these monies, maintains that she "did not knowingly make any false

statements with respect to the prior sale of [her] house or with respect to [her] bankruptcy petition." (Marsh. Aff. ¶ 4, Copy at Ex. 1 to Pl.'s Resp.). In the absence of any evidence that, at the time of the filing of her bankruptcy petition, Marsh had reason to believe that her representation regarding the probable value of the pending litigation was false, the Court also finds that this allegation does nothing to demonstrate that she was unqualified for her position with AERC of Michigan. Although the allegation that she deliberately misrepresented her financial status to a bank in 2010 is certainly more troubling, the Court declines to engage in a separate litigation to determine whose version of events - based upon a paucity of facts that are related to an event that occurred three years after Marsh was terminated from her position with AERC of Michigan - is accurate for what is, in the final analysis, a marginal issue.

The Court next turns to AERC of Michigan's second purported basis for finding that Marsh was unqualified for her position. "In order to show that [s]he was qualified, [Marsh] must prove that [s]he was performing [her] job at a level which met [her] employer's legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) (citation and internal quotation marks omitted). AERC of Michigan asks the Court to rely upon its stated reasons for terminating Marsh's employment to find that she was unqualified for the position. The Sixth Circuit, however, has expressly disallowed this approach. "When assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000); *see also Wexler*, 317 F.3d at 574 ("[A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when

analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination."). Instead, "[a]t the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether . . . she is qualified for the relevant job. . . . [This burden] can therefore be met by presenting credible evidence that . . . her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. . . . [T]he inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Wexler*, 317 F.3d at 575-76.

AERC of Michigan presumably believed - at the time of Marsh's hiring and subsequent re-hiring - that she possessed the requisite skills, education, and experience to render her qualified for this position, and the Court perceives no reason to doubt its assessment. Indeed, after she had voluntarily left its employ after having worked there for one year, her former supervisor inquired if she would like to return to the Company. Moreover, the evidence demonstrates that Marsh met the qualifications as set out in the job posting for this position (i.e., high school diploma or Graduate Equivalency Degree ("GED"); six months to one year of leasing or customer service experience; real estate license preferred but not required). Marsh had attained her GED, had several years of experience working in a similar capacity for other leasing companies, and had, at one time, possessed a real estate license. The Court thus finds, based upon the factors outlined above, that Marsh was objectively qualified for the purposes of the prima facie analysis.

Marsh has proffered two separate bases for finding that she has established the fourth element of her prima facie case, asserting that (1) she was replaced by a substantially younger

individual, Marla Stuckey, and (2) other employees received unacceptable "phone shop" and "video shop" scores but were not terminated. Although AERC of Michigan states that Marsh has not provided any evidence of the first claim, the Court notes that she did submit an employee list which appears to have been provided by AERC[5] to the EEOC during the course of its investigation. This list indicates that Stuckey, aged twenty-six, was hired on January 2, 2008, for a position as a leasing consultant. This document shows that, three weeks after Marsh's termination, she was succeeded by a substantially younger individual to fill the same position with the Company. When "view[ing] the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party," *60 Ivy Street Corp.*, 822 F.2d at 1435, and in light of the fact that the prima facie burden is "not high," the Court concludes that this is sufficient to establish that Marsh was replaced by an individual outside of the protected category. Thus, the Court need not analyze Marsh's second argument with respect to the fourth element of the prima facie case.

Because Marsh has established all four elements of her prima facie case, the Court turns to the next steps in the *McDonnell Douglas* burden-shifting analysis.

D.     Pretext

AERC of Michigan states that it terminated Marsh's employment because she had (1) repeatedly received unacceptable scores on her "phone shops" and "video shops,"[6] and (2) acted

---

[5]The EEOC investigation named AERC, rather than AERC of Michigan, as the respondent.

[6]Although Marsh relies on the "phone shop"and "video shop" reports of other employees in her brief, she also argues that these reports are inadmissible hearsay because they represent the opinions of unknown individuals who cannot be cross-examined. This argument is incorrect, however, because these reports were not offered for establishing the truth of the matter asserted, Fed. R. Evid. 801(c), but instead have been proffered "to demonstrate the state of mind and motive of [AERC of Michigan's] managers in discharging [Marsh]," *Michael v. Caterpillar Fin.*

in violation of various Company policies. This argument is sufficient to meet its burden of articulating a legitimate, nondiscriminatory reason for its decision to terminate her. *See Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996) (stating, in age and gender discrimination case, that "the defendant need not *prove* a nondiscriminatory reason for not promoting [plaintiff], but need merely *articulate* a valid rationale").

The burden of establishing that this proffered explanation was pretextual now falls upon Marsh. Under the circumstances of this case, she must "show by a preponderance of the evidence . . . (1) that the [employer's] proffered reasons had no basis in fact, (2) that [these] proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." *Pennington v. W. Atlas, Inc.*, 202 F.3d 902, 909 (6th Cir. 2000).

"The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are factually false." *Id.* Marsh has not contended that the proffered reasons were without any basis whatsoever. In fact, she acknowledges that (1) her "phone shop" scores and "video shop" scores have been accurately represented by AERC of Michigan and (2) these scores are lower than the acceptable benchmarks. There is also no evidence or allegation that AERC of Michigan controlled the evaluations performed by the third-party contractor or invented or purposefully misconstrued the substance of its reports so as to generate an excuse to terminate her. *See Shahid v. Ford Motor Co.*, 76 F.3d 1404, 1414 (6th Cir. 1992) (finding no pretext where employer had received notice that employee had accepted kickbacks from outside supplier, and noting "[t]he date of [the suppliers' notice] letter and the attached documentation show that [the employer] did not invent this violation or control

*Servs. Corp.*, 496 F.3d 584, 598 (6th Cir. 2007) (citation and internal quotation marks omitted).

the timing of its surfacing from a source outside the company"). Marsh, while admitting that she had failed to obtain the required identification before giving tours to prospective tenants, denies having violated other Company policies. However, she does not contend that her employer did not receive an e-mail from a fellow employee who asserted that she had violated two other company policies. Thus, she cannot demonstrate that the proffered reason by her employer had no basis in fact.

"The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Pennington*, 202 F.3d at 909. Marsh makes precisely this type of argument when she states that other employees also received unacceptable "phone shop" and "video shop" scores but were not terminated. However, Marsh has very selectively cited to the record. For example, she states that Shirley Szatkowski, another leasing consultant, had a "video shop" score of sixty-seven, but fails to note that she also received (1) an acceptable "video shop" score of eighty-seven, and (2) fourteen "phone shop" scores ranging from a low of eighty-two to a high of one hundred, which were all near or above the acceptable level and significantly higher than her own. Similarly, she states that Stuckey received a video shop score of seventy-three, but fails to note that she also received a video shop score of ninety and her phone shop scores in the low to high nineties were all acceptable and significantly higher than her own. A third employee, Kristen Boike, received only two phone shop scores eighty-one and eighty-six during her employment tenure of four months with AERC of Michigan. A fourth employee, Sharie Quinn, received only two phone shop scores - sixty-seven and seventy-four - since beginning her

employment in April 2008. These individuals, both of whom were part-time employees, received significantly higher scores than Marsh. Finally, Marsh points to two individuals who did not hold the position of leasing consultant: Cornelius Young, whose only phone shop score was eighty-eight, and Diane Shimoura, whose phone shop scores were ninety-four, ninety-eight and one hundred. AERC of Michigan has shown that Marsh consistently achieved phone and video shop scores that were both unacceptable and significantly lower than any other leasing consultant's scores. Moreover, although Marsh disputes the accuracy of the Young's report, AERC of Michigan has shown that it had been informed that Marsh had violated other Company policies as well.[7] Because she has not alleged or shown that any other employee committed the same violations and was not terminated, she has failed to identify any individual who "engaged in substantially identical conduct to that which [AERC of Michigan] contends motivated its discharge of [Marsh]." *Pennington*, 202 F.3d at 909. Thus, she has not shown that AERC of Michigan's proffered reasons were insufficient to motivate her discharge.

Finally, in making the second type of claim, a plaintiff does not dispute the factual basis of the proffered explanation or that those facts could justify the decision, but rather "attempts to indict the credibility of [her] employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the

---

[7]Marsh alleges that she never committed the policy violations ascribed to her by Young. However, even if Young's allegations were untrue, there is no evidence or allegation that Horn, Carson, Ribideau, and Scregni did not reasonably believe them to be true. *See Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) ("This court has adopted an 'honest belief' rule with regard to an employer's proffered reason for discharging an employee. Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." (citations omitted)).

plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or a coverup." *Pennington*, 202 F.3d at 909. For the reasons that have already been alluded to above, Marsh's allegations fall far short of this showing. The only individual whom she claims made age-related comments or otherwise discriminated against her was Horn - but Horn did not make the decision to terminate Marsh's employment. Moreover, Marsh has expressly stated that she does not allege that any other persons who were directly or indirectly involved in her supervision, evaluation, discipline, or termination - such as Carson, Shimoura, Ribideau, Young, Gaiser, or any of the anonymous phone testers - harbored any discriminatory animus toward her or otherwise discriminated against her. The vast majority of Marsh's unacceptable phone and video shop scores - which form the mainstay of AERC of Michigan's non-discriminatory reason - were received before Horn was hired in October 2007. The fact that other employees received some unacceptable phone and/or video shop scores, but were not terminated, also does not undermine the credibility of AERC of Michigan's rationale. No other employee demonstrated such a consistent, long-term inability to obtain the requisite scores, and there are no allegations that any other employee committed the additional policy violations that have been imputed to Marsh.

For all of these reasons, Marsh has not carried her burden of demonstrating that "the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that [AERC of Michigan's] explanation is a pretext, or a coverup." *Pennington*, 202 F.3d at 909. Because she has not rebutted her employer's legitimate, nondiscriminatory reason for terminating her employment, the Court enters a judgment in favor of AERC of Michigan on Marsh's ADEA claim.

A plaintiff's burden in showing pretext is higher under Michigan law than it is under federal

law. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 438 (6th Cir. 2002). To prevail under the ELCRA, Marsh must show not only that the proffered non-discriminatory reason was not the true reason for her termination - which alone *may* be sufficient under the ADEA - but must also show that discrimination was the true reason. *Id.* ("Unlike federal law, however, Michigan law imposes a higher burden on plaintiffs after the employer has presented a legitimate, non-discriminatory reason for its employment actions. Specifically, Michigan law requires that the plaintiff show that the employer's stated reason is pretext for discrimination."). Because Marsh is unable to meet the lesser burden under the ADEA, it follows that she cannot meet the greater burden under the ELCRA.

## E.     Remaining Defendants

The parties dispute whether the remaining Defendants - AERC, AERC Oaks Hampton, and AERC Oaks - can be held liable to Marsh under the "single employer" or "integrated enterprise" doctrine. *See York v. Tenn. Crushed Stone Ass'n*, 684 F.3d 360, 362 (6th Cir. 1982). Under this doctrine, apparently distinct entities can nevertheless be considered so interrelated as to constitute a single employer for purposes of ADEA liability. *Id.* (listing relevant factors). These three Defendants have asked the Court to dismiss them from this litigation for lack of evidence that they were Marsh's employer or, in the alternative, enter a summary judgment in their favor for the reasons set forth in AERC of Michigan's brief.  In light of the foregoing determination, the Court need not engage in the single-employer inquiry. Rather, it will enter a summary judgment in favor of all Defendants on both of Marsh's claims.[8]

---

[8]For this same reason, the Court need not address the alternative argument that Marsh failed to exhaust her administrative options as to all Defendants not named in the EEOC charge.

IV.

For the reasons that have been set forth above, the Court grants (1) AERC of Michigan's

motion for summary judgment (ECF No. 32), and (2) the remaining Defendants' motion in the

alternative for summary judgment (ECF No. 34).


IT IS SO ORDERED.


Date: April 5, 2012                                          s/Julian Abele Cook, Jr._____
                                                             JULIAN ABELE COOK, JR.
                                                             U.S. District Court Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on April 5, 2012.


                                                             s/ Kay Doaks_____
                                                             Case Manager